1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DUANE PARTRIDGE,

                        Plaintiff,

        v.

HEARTLAND EXPRESS INC OF IOWA,

                        Defendant.

CASE NO. 3:24-cv-05486-DGE

ORDER ON MOTION TO
REMAND

## I       INTRODUCTION

This case was removed to the Court on June 20, 2024.  (Dkt. No. 1.)  Before the Court is Plaintiff Duane Partridge's motion to remand, filed on August 8, 2024.  (Dkt No. 12.)  Defendant Heartland Express, Inc. of Iowa filed its opposition on September 3, 2024 (Dkt. No. 15), which Plaintiff replied to on September 10, 2024.  (Dkt. No 16).  Having considered the Parties' briefing in full, the Court REMANDS the action to Pierce County Superior Court for lack of subject matter jurisdiction.

## II    BACKGROUND

On May 20, 2024, Plaintiff filed this class action in Pierce County Superior Court, alleging that Defendant violated the Washington Equal Pay and Opportunities Act ("EPOA"), Washington Revised Code § 49.58.110, by failing to disclose the wage scale and salary range in its job postings.  (Dkt. No. 1-2 at 3.)

### A.  Statutory Background

In 2018, the EPOA was amended for the first time since its original passage in 1943.  The Washington Legislature found that "despite existing equal pay laws, there continues to be a gap in wages and advancement opportunities among workers in Washington, especially women" and updated the EPOA "to address income disparities, employer discrimination, and retaliation practices, and to reflect the equal status of all workers in Washington state."  Wash. Rev. Code § 49.58.005.  The law was updated again in 2019 to prevent employers "from seeking the wage or salary history of an applicant for employment" or requiring that "the applicant's prior wage or salary history meet certain criteria."  Wash. Rev. Code § 49.58.100.  The 2019 amendments established that "individual[s]" were entitled to remedies for statutory violations, including "actual damages; statutory damages equal to the actual damages or five thousand dollars, whichever is greater;" as well as costs and reasonable attorneys' fees.  Wash. Rev. Code § 49.58.060–070.

The most recent EPOA amendment, which became effective in January 2023, requires employers to "disclose in each posting for each job opening the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant."  Wash. Rev. Code § 49.58.110.  The provision applies to employers with 15 or more employees and replaces the term "individual" in the relief section with "job applicant or

employee," thus establishing that job applicants are entitled to remedies.  *Id.*  The statute, however, does not provide a definition of "job applicant."  *See id.; see also Floyd v. Insight Glob. LLC*, No. 23-CV-1680-BJR, 2024 WL 2133370, at *2 (W.D. Wash. May 10, 2024) (noting the same).  The 2023 amendment was enacted "in part to allow a discussion at the start of the process instead of after an offer has been made, which will increase the ability to negotiate pay." *Spencer v. Vera Whole Health, Inc.*, No. C24-337 MJP, 2024 WL 3276578, at *1 (W.D. Wash. July 2, 2024) (quoting H.B. Rep. ESSB 5761, at 2) (internal quotations and brackets omitted). "The Legislature was also concerned that many candidates spend hours going through rounds of interviews only to find out they can't live on the offered pay."  *Id.*

**B. Factual and Procedural Background**

The facts alleged in Plaintiff's complaint are sparse.  Plaintiff states that "in or around April 2023, Plaintiff applied for a job opening in Washington State with Defendant."  (Dkt. 1-2 at 3.)  Plaintiff asserts that "Defendant's job postings do not disclose the wage scale, salary range, or a general description of the benefits or other compensation to be offered" and thus that "Plaintiff lost valuable time applying for a job with Defendant for which the wage scale or salary range was not disclosed."  (*Id.* at 3.)  Plaintiff claims to represent "hundreds" of individuals who applied for a job opening in the State of Washington with Defendant between January 1, 2023, and the present.  (*Id.* at 4.)  Plaintiff claims that "[a]s a result of Plaintiff's and Class Members' inability to evaluate the pay for the position, negotiate that pay, and compare that pay to other available positions in the marketplace, Plaintiff and Class Members were harmed."  (*Id.*) Plaintiff seeks declaratory judgement, statutory damages, and reasonable attorneys' fees.  (*Id.* at 7.)

Defendant removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(d)(2).  (Dkt. No. 1 at 2-3).  Plaintiff then filed the instant motion to remand, asserting that Plaintiff himself lacks standing in this Court.  (Dkt. No. 12 at 2).  To support his argument, Plaintiff points out that the language of his complaint and EPOA claim is "virtually identical to the complaints and EPOA claims filed in" eight cases recently remanded by courts in this district for lack of standing.  *Id*. at 3.  Indeed, in one recent such order, Judge Rothstein noted that the matter was "one of 27 lawsuits with virtually identical [EPOA] complaints filed in King County Superior Court and subsequently removed to this Court."  *Floyd*, 2024 WL 2133370, at *1.

### III      DISCUSSION

**A. Legal Standard**

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to the appropriate federal district court so long as that court would have had original jurisdiction over the action.  *Ansley v. Ameriquest Mortg. Co*., 340 F.3d 858, 861 (9th Cir. 2003) ("The threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court.").  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand."  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).  "This rule of narrow construction both recognizes the limited jurisdiction of federal courts and 'protect[s] the jurisdiction of state courts.'"  *Casola v. Dexcom, Inc.*, 98 F.4th 947, 954 (9th Cir. 2024).  The presumption against removal places the burden on the defendant to establish that removal is proper.  *Id*.  "Where

doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir. 2003).

## B. Plaintiff Lacks Article III Standing

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "To state a case or controversy under Article III, a plaintiff must establish standing." *Id*. at 133. Federal courts lack subject matter jurisdiction over a plaintiff that lacks standing. *Warth v. Seldin*, 422 U.S. 490, 498–499 (1975). The standing requirement remains a "threshold issue" in class action cases; "[i]f the individual plaintiff lacks standing, the court need never reach the class action issue." *Lierboe v. State Farm Mut. Auto. Ins. Co*., 350 F.3d 1018, 1022 (9th Cir. 2003).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The plaintiff bears the burden of establishing each element of the standing requirement; "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The Supreme Court is clear that a plaintiff does not "automatically satisfy[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Thus, when an alleged injury is premised on the violation of a statutory right, the plaintiff must show that the harm incurred is concrete and particularized and not "a bare procedural violation."

*Id.* This entails a showing of "physical, monetary, or cognizable intangible harm." *TransUnion* 594 U.S at 427.  "[A]n intangible injury may be concrete if it presents a material risk of tangible harm or 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' like common law torts or certain constitutional violations." *Phillips v. United States Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023) (quoting *Spokeo*, 578 U.S. at 340–41).

Although "the omission of statutorily required information can constitute a distinct, concrete injury," not "every minor inaccuracy reported in violation of [a statute] will 'cause real harm or present any material risk of real harm.'"  *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021) (quoting *Robins v. Spokeo, Inc.* ("*Spokeo II*"), 867 F.3d 1108, 1116 (9th Cir. 2017)).  "A procedural violation of an informational entitlement does not by itself suffice to keep a claim in federal court." *Id.* at 679 (quoting *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019)).  In cases such as this one, "[t]o determine whether the violation of a statute constitutes a concrete harm, we engage in a two-part inquiry." *Id.*  "We first consider 'whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights).'" *Id.* (quoting *Spokeo II,* 867 F.3d at 1113).  "If so, we then assess 'whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* (quoting *Spokeo II*, 867 F.3d at 1113).

As Plaintiff points out, courts in this district have repeatedly found that litigants who alleged materially identical statutory violations of the EPOA lacked Article III standing under the two-step *Magadia* inquiry.  (Dkt. No. 16 at 5–6); *see, e.g., Floyd,* 2024 WL 2133370, at *8, *Vera Whole Health*, 2024 WL 3276578, at *3.  Defendant responds that "those cases were . . . distinct from this case" because the "plaintiffs in those cases did not allege that they had wasted

1   time and effort." (Dkt. No. 15 at 2).  Defendant devotes the majority of its reply brief to this

2   argument.  (*See generally* Dkt. No. 15.)  However, the complaints in each of the eight cases

3   contained language about "valuable time" wasted.  (*See* Dkt. No. 16 at 4) (citing Dkt. Nos. 17-1–

4   17-8).  For example, in *Vera Whole Health*—which was handed down by this court only two

5   months ago—the complaint used the same exact language as the instant complaint, alleging that

6   "Plaintiff and the Class members lost valuable time applying for jobs with Defendants for which

7   the wage scale or salary range was not disclosed."  *Spencer v. Vera Whole Health, Inc.*, No.

8   2:24-cv-00337-MJP, Dkt. No. 1 at 5 (W.D. Wash.).  The *Vera Whole Health* court ultimately

9   concluded that "[a]lthough the EPOA protects concrete interests of job applicants . . . the alleged

10  violation Spencer identifies did not cause an actual harm or present a material risk of harm to

11  that interest." *Vera Whole Health*, 2024 WL 3276578, at *3.  This Court agrees with *Vera*

12  *Whole Health*'s conclusion.

        First, the disclosure requirement in the EPOA was established to protect job applicants

13

14  and employees and increase their ability to negotiate pay.  The Washington Legislature amended

15  the EPOA to address the issue that "[p]ay transparency . . . impacts women and minorities the

16  most," in part because "some folks do not have the networks or ability to negotiate for salaries."

17  H.B. Rep. ESSB 5761, at 2.  Thus, the bill protects job applicants' concrete interest in receiving

18  "sufficient information to ensure fair and equitable pay negotiations." *Vera Whole Health*, 2024

19  WL 3276578, at *3.  The provision was also designed to prevent harm to those who might

20  "'spend hours going through rounds of interviews only to find out they can't live on the offered

21  pay.'" *Vera Whole Health*, 2024 WL 3276578, at *3 (quoting S.B. Rep. ESSB 5761, at 3).

22      Second, the conclusory statements in Plaintiff's complaint do not support a finding that

23  Defendant's lack of disclosure caused Plaintiff the sort of "real harm" the EPOA was "designed

24

1    to prevent." *Spokeo II*, 867 F.3d at 1115.  In full, Plaintiff asserts three boilerplate claims: that

2    he "applied for a job opening" without a listed salary range, that he lost "valuable time" in doing

3    so, and that his "inability to evaluate the pay for the position, negotiate that pay, and compare

4    that pay. . . harmed [him]." (Dkt. No. 1-2 at 3–4.)  Plaintiff does not allege that he was offered

5    employment or an interview.  Thus, he does not suggest that the deprivation of information

6    compromised his bargaining power in pay negotiations, placed him at a disadvantage relative to

7    other applicants, or resulted in him having to exit a lengthy interview process after learning the

8    pay was insufficient for his needs.  As in *Vera Whole Health*, Plaintiff "does not even allege he

9    was qualified for the position" or provide any information about what harm he incurred other

10   than time "lost." *Vera Whole Health*, 2024 WL 3276578, at *3.

          In *Magadia*, the court found that Walmart's statutory violation—depriving employees of

12   itemized wage statements—presented a material risk of harm to employees' interest in the

13   statutorily guaranteed information, because without that information, the employees had no way

14   of knowing whether wage statements were calculated correctly.  *Magadia*, 999 F.3d at 679.  The

15   court found the California statute in question was designed to prevent exactly that harm: refusal

16   to provide information that would allow employees to "tell from their wage statements how the

17   company calculated their wages or which dates the paystub covered." *Id*.  Likewise, in this

18   instance, Plaintiff must allege that the lack of salary information caused or put him at risk of

19   concrete and particularized harm contemplated by the EPOA.  "A plaintiff may not bring a

20   generalized grievance, but rather must show a personal stake in the outcome of the controversy."

21   *Dutta v. State Farm Mut. Auto. Ins. Co*., 895 F.3d 1166, 1172-73 (9th Cir. 2018).  But time lost

22   in merely submitting an application is "not an injury that the EPOA seeks to prevent or redress."

23

24

1   *Vera Whole Health*, 2024 WL 3276578, at \*3.  A generalized assertion of time lost, therefore,

2   does not support Article III standing.

3          Defendants' attempt to inject additional factual information into this matter to support a

4   finding of standing is futile, as Defendants' declarations about the time-intensive nature of its job

5   application process are not part of Plaintiff's complaint.  (*See, e.g.,* Dkt. No. 15 at 7)

6   ("Heartland's application is extremely involved, and requests detailed information regarding

7   work history, licensing, accidents, safety, and traffic convictions. . . . While Plaintiff ultimately

8   aborted the process . . . there is no doubt that he invested time into the process of potentially

9   going to work for Heartland.").  It is well-settled law that "[t]he plaintiff may by the allegations

10  of his complaint determine the status with respect to removability of a case."  *Caterpillar Inc. v.*

11  *Williams*, 482 U.S. 386, 392 n.7 (1987) (quoting *Great North R. Co. v. Alexander*, 246 U.S. 276,

12  282 (1918)).  As the court commented in *Floyd*, "[a]lthough Mr. Floyd's declaration shows that

13  he may be capable of amending his complaint to support standing, the Court does not consider

14  his declaration as part of his pleading." *Floyd*, 2024 WL 2133370 at \*8.  In this instance,

15  Defendant's postulations of what injury *may* have happened to *Plaintiff* are even further from the

16  mark, as it is Plaintiff himself who strenuously denies meeting the Article III standing

17  requirement.

18          As was the case in *Floyd* and *Vera Whole Health*, Plaintiff's complaint fails to identify a

19  concrete and particularized injury sufficient to give rise to Article III standing.  Without

20  standing, the Court lacks subject matter jurisdiction.  *Warth*, 422 U.S. at 498.  The case is

21  therefore REMANDED to Pierce County Superior Court.

22

23

24

ORDER ON MOTION TO REMAND - 9

1

**IV      CONCLUSION**

2          The Court concludes it lacks subject matter jurisdiction over this matter because

3   Plaintiff's complaint does not allege a concrete harm sufficient to satisfy Article III standing.

4   Because the Court may not preside over this matter, it REMANDS the matter to Pierce County

5   Superior Court.

6          Dated this 12th day of September, 2024.

7

8

9   _____

10   David G. Estudillo
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24